IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-03027-RBJ

KENNETH KAIGHN,

     Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

     Defendant.

---

## ORDER

---

     This matter is before the Court on review of the Commissioner's decision denying plaintiff Kenneth Kaighn's application for disability insurance benefits pursuant to Title II of the Social Security Act.  Jurisdiction is proper under 42 U.S.C. § 405(g).  This dispute became ripe for decision by this Court on July 15, 2013 upon plaintiff's filing of a reply brief.  The Court apologizes to the parties and counsel for its delay in addressing the case.

**Standard of Review**

     This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards."

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

*Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998).  A decision cannot be based on

substantial evidence if "it is overwhelmed by other evidence in the record. . . ."  *Bernal v.*

*Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).  Substantial evidence requires "more than a scintilla,

but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Evidence

is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374

(10th Cir. 1992).

**Procedural History**

Mr. Kaighn first applied for disability benefits on October 3, 2011.  R. 18.  He alleges he

first became disabled on August 1, 2010 due to a traumatic brain injury (TBI), post-traumatic

stress disorder (PTSD), degenerative disc disease, carpal and cubital tunnel syndromes in both

arms, sciatica, cervical strain, and a bulging disc.[2]  The Social Security Administration initially

denied his application for disability on November 25, 2011.  *Id.*  Mr. Kaighn then requested a

hearing before an administrative law judge (ALJ), and the ALJ held a hearing via video

conference on April 24, 2012.  On May 14, 2012, ALJ Paul R. Armstrong issued an opinion

denying benefits.  Mr. Kaighn then appealed the ALJ's decision to the Appeals Council.  The

Appeals Council denied Mr. Kaighn's request for review on September 26, 2012.  R. 1.

Thereafter he filed a timely appeal with this Court.

**Facts**

Mr. Kaighn is a former Marine and Army National Guardsman.  After service in Somalia,

Iraq, and Afghanistan, Mr. Kaighn moved with his family to Colorado.  He has a high school

education, and in addition to his duties in the military, he has worked for the U.S. Forest Service

---

[2] Mr. Kaighn's initial application alleged an onset date of October 4, 2011, but he later amended his application.

as a heavy equipment operator.  Mr. Kaighn left his job with the Forest Service after his medical issues made it difficult for him to stay on-task and caused problems with coworkers.

Mr. Kaighn has been treated by an interdisciplinary team at the VA Hospital in Grand Junction for several years now.  R. 332-348, 360, 404-502, 509-658.  Because the record contains voluminous medical opinions and because I discuss them in detail later in this order, I offer only a brief summary of the facts at this stage.

Physical and Mental Impairments

Mr. Kaighn has been diagnosed with post-traumatic stress disorder ("PTSD"), Meniere's disease,[3] traumatic brain injury ("TBI"), degenerative disc disease, and peripheral ulnar neuropathy.  Many of these problems appear to be the result of explosions and other trauma sustained while in combat overseas.  Mr. Kaighn's impairments, in combination, are considered 100 percent disabling according to the Department of Veterans Affairs.  R. 211.

Treatment notes from Dr. Robert Scribner—who managed Mr. Kaighn's psychiatric medications—indicate that Mr. Kaighn was suffering from severe anhedonia,[4] isolation, and job stress.  R. 664.  Dr. Scribner and Mr. Kaighn discussed the possibility of medical retirement.  R. 461.

In 2012, a treating psychologist, Dr. William Steele, indicated that Mr. Kaighn suffered from marked limitations in his ability to sustain concentration and to work with others.  R. 705-07.  That same year, Dr. Robert Graves, an examining physician, examined Mr. Kaighn, noting that his back and neck problems would cause "limited standing, sitting, lifting, [and] bending [that] would affect work."  R. 602-03.  Dr. Graves also concluded that Mr. Kaighn had

---

[3] A disease of the inner ear that causes problems with hearing and balance.

[4] Inability to experience pleasure in normally pleasurable acts.

occasional neurobehavioral problems that might impact work and social interactions but probably would not preclude them entirely.  R. 558-61.  He also noted that Mr. Kaighn's TBI might cause problems with focus, even in a sedentary work environment.  R. 555.  These observed cognitive limitations were supported by a Compensation and Pension Examination Report filled out by Dr. Julie Lindsay' also in 2012.  R. 528-39.

Mr. Kaighn himself has testified that his PTSD and TBI cause frequent headaches and make it difficult to concentrate.  R. 50-60.  He also claims that his back and neck issues make it hard for him to remain in one position for very long and contribute to his problems with concentration.  *Id.*

ALJ's Opinion

The Social Security Administration uses a five step process to determine whether a claimant qualifies for disability insurance benefits.  At step one, the ALJ determined that Mr. Kaighn had not engaged in substantial gainful activity since August 1, 2010 (his alleged onset date).  At step two, the ALJ found that Mr. Kaighn suffered from the following severe impairments: "traumatic brain injury; post-traumatic stress disorder with anxiety and depression; Meniere's disease; degenerative disc disease of the cervical and lumbar spine; and peripheral ulnar neuropathy."  R. 21.  The ALJ also noted that Mr. Kaighn was recently diagnosed with diabetes, but found that condition to be less than severe because it was not causing any functional limitations.  *Id.*  At step three, the ALJ determined that none of these impairments— alone or in combination—met or medically equaled one of the listed impairments.

At step four, the ALJ noted that Mr. Kaighn is unable to perform any of his past relevant work, but the ALJ nonetheless decided that Mr. Kaighn had a residual functional capacity ("RFC") to

perform sedentary work as defined in 20 CFR 404.1567(a) with the following restrictions: simple, unskilled work only; no work at unprotected heights, around dangerous moving machinery, open flames or bodies of water; no more than superficial contact with supervisors, co-employees and the general public; and no repetitive manipulative work or forceful gripping bilaterally.   Frequent manipulative work and forceful gripping is permissible.

R. 22.

In reaching this conclusion, the ALJ decided that "claimant was not credible" in his description of the intensity, persistence, and limiting effects of his alleged symptoms.  R. 24. According to the ALJ, Mr. Kaighn's testimony was inconsistent with the objective medical evidence in the record as well as Mr. Kaighn's prior statements.  R. 24-33.

Regarding his TBI, the ALJ noted that while Mr. Kaighn alleged that he is unable to perform skilled sedentary work, he also told his physicians that he wished to return to college for a degree in information technology.  R. 427, 472.  The ALJ further noted that an "extensive August 2009 neuropsychological evaluation [by Dr. Bowen] documented neurocognitive disorder secondary to mild TBI, as well as PTSD and anxiety disorder."  R. 25 (citing R. 349-59).  Dr. Bowen concluded that Mr. Kaighn suffered from mild impairments in memory, attention, concentration, executive functions, and social functions.  R. 358.  While these impairments certainly could interfere with workplace or social interaction, they did not "preclude" them.  *Id.*

Longitudinal treatment records confirmed Mr. Kaighn's PTSD diagnosis but also illustrated that treatment was helping, and that his symptoms were partially controlled.  R. 464. The VA assigned Mr. Kaighn an impairment rating of 70 percent for his PTSD symptoms due to a myriad of symptoms that interfered with work, family, and social relations:

suicidal ideation; obsessional rituals which interfere with routine activities; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control; spatial disorientation;

neglect of personal appearance and hygiene; difficulty adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships.

R. 650-51.  The ALJ discounted this opinion, however, due to the fact that during this time Mr. Kaighn continued to work as an equipment operator and then as a fleet manager for the Forest Service.  R. 26.

The ALJ also ended up giving more weight to a non-treating, non-examining source—Dr. Berkowitz—regarding the limiting effects of Mr. Kaighn's PTSD because the other sources—Dr. Steele and Dr. Bowen—while theoretically entitled to greater weight as examining sources, offered opinions that were, at least according to the ALJ, inconsistent with other substantial evidence in the record.  The treatment notes of those doctors indicated no problems with simple tasks like counting backwards or concentrating enough to participate in group discussions.  R. 28.  At most, the ALJ concluded, Mr. Kaighn has a moderate concentration deficit.  *Id.*

As a result, the ALJ gave limited weight to Dr. Steele's opinion, but he gave substantial weight to the opinions of Dr. Bowen and Dr. Berkowitz who both, according to the ALJ, concluded that the TBI and PTSD symptoms caused mild to moderate limitations, but nothing that would preclude work altogether.  *Id.*  These conclusions, according to the ALJ, dovetailed with Mr. Kaighn's own testimony regarding his ability to return to school and the reasons he ended up leaving the Forest Service.  *Id.*

During step four, the ALJ also analyzed Mr. Kaighn's psychiatric impairments under the so-called "B criteria" for Listings 12.02 (Organic Mental Disorders) and 12.06 (Anxiety Disorders).  R. 28.  Here, the ALJ found that Mr. Kaighn's symptoms did not cause marked restrictions in at least two categories.  He found that Mr. Kaighn's distractibility limited some activities like being sidetracked while performing chores or reading, but he was still capable of

managing accounts, doing occasional shopping or driving to appointments, and on one occasion, going hunting with friends. These factors led the ALJ to conclude that Mr. Kaighn was only mildly limited in his ability to perform daily activities.

On the second measure, social function, the ALJ noted that Mr. Kaighn's hypervigilance and paranoia caused some strain within his family and among coworkers, but that he was also able to attend some of his children's events, used techniques learned in therapy to improve family relations, and was not precluded from all workplace interaction. R. 29.

On the third measure, capacity to maintain concentration, persistence, and pace, the ALJ found a moderate limitation based on the conflicting evidence in the record. Mr. Kaighn self-reported as unable to maintain focus and needing reminders to complete chores, take medicine, and make short trips outside the house. R. 70. But his treatment records indicated that he was highly task-focused and his memory improved with therapy. R. 352. As a result, the ALJ found the moderate limitation and restricted Mr. Kaighn to simple, unskilled work. R. 30.

The fourth measure concerns episodes of decompensation. Because there was no evidence in the record that Mr. Kaighn experienced such episodes, the ALJ found no limitation in this category. R. 30.

In 2011, Mr. Kaighn was diagnosed with Meniere's disease. Later that year, Mr. Kaighn reported that treatment with medication was helping to the point that his dizzy spells were "almost nonexistent." R. 452. Later exams revealed some continued use of a cane and eye pain. At the end of 2011 in a VA disability application, Mr. Kaighn reported that medication was helping but did not eliminate his symptoms. R. 574. The ALJ gave "substantial weight" to the opinion of a State agency consultant, Dr. Anthony LoGalbo, who concluded that Mr. Kaighn could do sedentary work but should avoid workplace hazards. R. 127-28.

7

The ALJ concluded that Mr. Kaighn's back pain is "under good control with conservative treatment and exercise," R. 31, due to the fact that Mr. Kaighn could continue going to the gym, hunt, and was only using narcotic pain management medication once per week.  R. 437, 448, 625.  The ALJ reached a similar conclusion regarding Mr. Kaighn's alleged neck and upper extremity impairments.  R. 32.  Great weight was given to Dr. LoGalbo's opinion that Mr. Kaighn's exertional and postural activities should be limited due to neck and back pain but found no manipulative limitations.  *Id.* (citing R. 127-28).  This, according to the ALJ, was in line with Mr. Kaighn's treatment records which illustrated some pain but good symptom control with treatment.  R. 603-13.

The ALJ gave no weight to Nurse Practitioner Blankenship's opinion.  R. 33.  According to the ALJ, Mr. Blankenship is not an acceptable medical opinion under the regulations.  *Id.* (citing 20 C.F.R. 404.1527(a)(2) and 416.927(a)(2)).  While his opinion was important and required analysis, ultimately the ALJ concluded that the restrictive 15-minute limitation on sitting, standing, and walking in a workday was "not remotely supported by the objective medical evidence or the claimant's description of his daily activities."  *Id.*  Specifically, Mr. Kaighn exercised regularly, shopped with his wife, has hunted at least once, and never testified to having to lie down throughout the day.[5]  *Id.*  And Mr. Blankenship's opinion about Mr. Kaighn's inability to work was a decision reserved to the Commissioner, not a true medical opinion.  *Id.*

---

[5] This is incorrect.  In response to a question on this topic, Mr. Kaighn testified that he had to lie down and sleep a good part of the day "on occasion" and that this sometimes happened two or three times per day due to pain or exhaustion.  R. 95-96.  The VE testified that if the hypothetical person had to take additional breaks to accommodate this sort of limitation, then the jobs she identified would no longer be available.  R. 96.  Even if he was able to maintain attendance and stay in the work area, but was still unfocused or off-task for 15 minutes out of every hour, the jobs identified by the VE would be unmanageable for such a hypothetical claimant.  R. 96-97.

At step five, the ALJ asked a vocational expert to opine about the employment opportunities available to a hypothetical person with the residual functional capacity assigned to Mr. Kaighn.  The expert indicated that such a person would be able to find employment in the national economy as, for example, a touch-up screener, a film touch-up inspector, and a document preparer, and accordingly, the ALJ concluded that Mr. Kaighn was not entitled to disability benefits under the Act.  R. 34-35.

**Analysis**

Mr. Kaighn makes essentially four arguments on appeal: (1) the ALJ improperly discounted several medical opinions; (2) the ALJ failed to account properly for Mr. Kaighn's mental impairments and subjective complaints in the residual functional capacity; (3) the ALJ improperly arrived at a negative credibility determination for Mr. Kaighn's testimony; and (4) the ALJ failed to evaluate properly Mr. Kaighn's disability rating from the VA.  I conclude that the ALJ failed properly to weigh several medical opinions; that he should have found much of Mr. Kaighn's testimony credible; and that his failure to do so led to an inaccurate residual functional capacity assessment.  Because further fact-finding would not be helpful in this case, this Court reverses the decision of the ALJ and remands the case to the Commissioner for an immediate award of benefits.

**1.  <u>Weight Assigned to Various Opinions</u>**

Treating physicians' opinions are generally given controlling weight.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  However, before assigning a treating physician's opinion controlling weight, "[a]n ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at

1300).  Next, the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and should be weighted using the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927.  *Robinson*, 366 F.3d at 1082 (quoting *Watkins*, 350 F.3d at 1300).  The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1301).  Although an ALJ should consider all of these factors, it is not necessary that she explicitly discuss every factor.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

An ALJ must give specific reasons for the weight assigned to a treating physician's opinion so that subsequent reviewers can determine the weight assigned and the reason for that weight.  *Watkins*, 350 F.3d at 1301.  If an ALJ rejects a treating physician's opinion completely, [he] must then "give specific, legitimate reasons for doing so."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301).  Moreover, the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  *Robinson*, 366 F.3d at 1083.

In this case, the ALJ improperly discounted several opinions.  I deal with them each in turn.

a. <u>Dr. Scribner</u>

First, as noted by Mr. Kaighn, the ALJ made no mention of Dr. Scribner's opinion in his

decision, so there is no indication of what weight that opinion carried in the ALJ's analysis.  I am

not persuaded by the government's argument that Dr. Scribner's notes are a mix of paraphrasing

of Mr. Kaighn's self-reported symptoms and Dr. Scribner's own recommendations, and

therefore, that the notes are not medical opinions under the regulations.  The regulations do not

state that a treating psychologist's opinion based on the claimant's subjective statements is not a

medical opinion.  The regulations state that "[m]edical opinions are statements from physicians

and psychologists or other acceptable medical sources that reflect judgments about the nature

and severity of your impairment(s), including your symptoms, diagnosis, prognosis, what you

can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R.

§ 404.1527(a); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

To be sure, Social Security regulations state that an *impairment* must be proven by

"medical evidence consisting of signs, symptoms, and laboratory findings, not only by your

statement of symptoms."  20 C.F.R. § 404.1508.  That regulation, however, is inapplicable in this

case, because the ALJ already found severe impairments due to PTSD and a TBI.  Therefore, Mr.

Kaighn is not offering Dr. Scribner's notes to prove that he suffers from an impairment as such

but to demonstrate the severity and limiting effects of his symptoms arising from that previously

established impairment.[6]  In other words, while Dr. Scribner's judgments and opinions about Mr.

---

[6] The Commissioner makes a valid point that if Dr. Scribner had stated any conclusions to the
effect that Mr. Kaighn is disabled or unable to work, then he would have intruded into decisions
reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d) ("Opinions on some issues, such as
the examples that follow, are not medical opinions. . . but are, instead, opinions on issues
reserved to the Commissioner because they are administrative findings that are dispositive of a
case; i.e., that would direct the determination or decision of disability.").  Dr. Scribner never
expressed such opinions, though he did discuss the possibility of medical retirement for Mr.

Kaighn's self-reported symptoms might be less persuasive than tests or laboratory findings about those symptoms, they still must be treated as a medical opinion under 20 C.F.R. § 404.1527, and the ALJ must determine what weight to give them.  In particular, Dr. Scribner's notes provide insight into the limited impact of medication on Mr. Kaighn's "severe anhedonia" and Dr. Scribner's judgment that Mr. Kaighn would require increased medication to combat panic attacks and depression.  R. 664-65.

b. Dr. Lindsay

Similarly, the ALJ failed to discuss the opinion of Dr. Lindsay who indicated that Mr. Kaighn has "deficiencies in most areas" and suffered from problems with concentration and focus that were exacerbated by his pain.  R. 531, 538.  The Commissioner attempts to recast Dr. Lindsay's opinion as that of a non-examining psychologist because she examined Mr. Kaighn via video-link rather than in-person.  The Commissioner cites no law or regulation for such a rule, but merely notes that "the reports of reviewing physicians are accorded less weight than those of examining physicians."  Def.'s Br. 15 (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987)).  A video-link examination by a psychologist is still an examination for purposes of the regulations.[7]  To hold otherwise would serve no useful purpose and would unnecessarily penalize claimants from rural areas or who are otherwise more likely to have to rely on video-conferencing technology for treatment.  Accordingly, Dr. Lindsay's opinion should have been analyzed by the ALJ as that of a consulting examiner.

I also disagree that with the Commissioner's argument that any failure to discuss Dr. Lindsay's opinions in more detail was harmless error.  Dr. Lindsay notes that Mr. Kaighn

---

Kaighn and finding a less stressful job.  Therefore none of Dr. Scribner's opinions are excludable as opinions on issues reserved to the commissioner.

[7] I have no occasion to decide whether a video-link examination by a physician regarding physical impairments would qualify as an examination under the regulations.

suffered from problems with concentration and focus in his Forest Service job, and that these symptoms would recur in future jobs. R. 538. The RFC reached by the ALJ provided for limited interactions with coworkers and supervisors in order to account for his irritability, and, according to the Commissioner, restricted him to simple, unskilled work in order to account for his difficulty concentrating. R. 22. However, there is no discussion of Dr. Lindsay's opinion and no indication of what role it played in determining the severity of Mr. Kaighn's problems concentrating. Therefore, it is impossible for this Court to determine whether failure to include such analysis was truly harmless. I am especially concerned by the cursory treatment of medical opinions about Mr. Kaighn's ability to concentrate and focus, because the hearing testimony suggests that even slight problems with concentration might have rendered Mr. Kaighn unable to perform the jobs identified by the vocational expert. R. 97 ("ALJ: Well, say he couldn't maintain attention and concentration for even an hour without being off-task for at least 15 minutes of every hour. Would that knock him out of those jobs or any other jobs? VE: Yes, it would.")

     c.  <u>Dr. Steele</u>

Mr. Kaighn also argues that Dr. Steele's opinions should have received controlling weight because he is a treating psychologist, and his opinion is supported by substantial evidence in the rest of the record. The Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (citations omitted). But I am convinced in this instance that the "little weight" given to Dr. Steele was legal error, because this finding was "overwhelmed by other evidence in the record" supporting his opinions. *Bernal*, 851 F.2d at 299. The ALJ concluded that although Dr. Steele opined that Mr. Kaighn suffers from marked impairment in ability to sustain concentration and

attention for extended periods, his opinion was contradicted by evidence from Dr. Bowen's examination and evidence from Dr. Steele's own notes. R. 28 (citing R. 706).[8]  However, the fact that Dr. Bowen found Mr. Kaighn to be "quite task-focused," R. 352, and that he could count backwards hardly constitutes substantial contradictory evidence in the record.  Moreover, such a justification by the ALJ overlooks many parts of Dr. Bowen's own opinion that *support* Dr. Steele's conclusions (see next paragraph).  And, as discussed above, Dr. Lindsay also supported Dr. Steele's opinions when she opined about how difficulty concentrating and staying on task caused problems for Mr. Kaighn at the Forest Service and would likely continue to cause problems for him in any future employment.  The ALJ should have given Dr. Steele's opinion controlling weight in the step four analysis.

    d. <u>Dr. Bowen</u>

    Mr. Kaighn argues that the ALJ ignored parts of Dr. Bowen's opinion despite the fact that he gave it substantial weight.  In particular, Dr. Bowen noted that Mr. Kaighn's depression and anxiety might limit his cognitive abilities, and that elevated anxiety and tension might make his performance of routine tasks difficult. R. 357.  The Commissioner counters that such an opinion is mere speculation and therefore not a real medical opinion under 20 C.F.R. § 404.1513(c).  I am not convinced that the regulation requires medical source opinions to be stated in absolute terms.  Frankly, the Commissioner cannot have it both ways: she cannot in one paragraph of her brief suggest that Dr. Bowen's opinion is entitled to great weight, enough to override the opinion of a treating physician like Dr. Steele, and in the next paragraph complain

---

[8] Dr. Steele also opined that Mr. Kaighn was markedly limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and to "accept instructions and respond appropriately to criticism from supervisors." R. 706.  Again, based on the testimony of the vocational expert discussed above, these limitations appear to eliminate the jobs identified by the ALJ which were unavailable to a hypothetical individual who needed more than normal breaks or was unable to focus for 15 minutes out of every hour.

that some of his conclusions are not even acceptable medical opinions because they are not stated with certainty. The ALJ erred by ignoring these parts of Dr. Bowen's opinion and simply highlighting those parts that supported a finding of non-disability. *Robinson*, 366 F.3d at 1083.

e. Mr. Blankenship

Mr. Kaighn also objects to the fact that the ALJ did not address the disability report prepared by Nurse Practitioner Blankenship. Here, again, the Commissioner responds that Mr. Blankenship's conclusion that Mr. Kaighn "is unable to perform sedentary duties without adaptations" is not a medical opinion but a decision about ultimate disability reserved to the Commissioner under 20 C.F.R. § 404.1527(d). This time, I agree. Mr. Blankenship's statement intrudes on a decision that is properly an administrative finding. Therefore the ALJ's failure to include this opinion in his analysis is not error.

f. Dr. Graves

Mr. Kaighn objects to the ALJ's failure to discuss Dr. Graves's opinions which limited him to no use of tools for more than one hour and notes problems standing, sitting, lifting, bending, and using the computer. R. 555, 602-07. At worst this was harmless error because the ALJ's assessment noted that Mr. Kaighn could not perform repetitive manipulative work or forceful bilateral gripping and it allowed for sedentary jobs in which postural changes were possible.

2. **Analysis of Mental Impairments and Subjective Complaints in the Residual Functional Capacity Assessment ("RFC")**

Mr. Kaighn makes several arguments about the alleged deficiency of the RFC. Most of these are a rehashing of arguments made elsewhere, namely that the ALJ failed to give appropriate weight to various medical opinions, and that the ALJ improperly discounted Mr.

Kaighn's credibility regarding the intensity and limiting effects of his symptoms. Those arguments are dealt with elsewhere in this order. Mr. Kaighn's remaining argument—that the ALJ was required at step four to give a function-by-function assessment of Mr. Kaighn's limitations—might be a good one.

According to Social Security Ruling 96-8P, an RFC assessment must address both the exertional and nonexertional capacities of the individual. 1996 WL 374184, at *5 (July 2, 1996). Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of the seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be addressed separately." *Id.*

The ALJ did not express the RFC in terms of these functional capacities before moving on to characterize Mr. Kaighn's RFC in terms of a broader exertional category—here, sedentary. This Court could not find any regulations, statutes, or case law indicating that an ALJ's failure to follow SSR 96-8P is reversible error. While the Court acknowledges that Social Security Rulings do not have the force and effect of law or regulations, "[t]hey are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). As I have written in another order issued this date (*Lloyd v. Colvin,* No. 12CV3350-RBJ), in future cases it would be helpful if ALJ's adhered to the policy enunciated in the SSR and provided a function-by-function assessment before continuing the analysis in broader strokes. But in this case, because I find that substantial evidence in the record contradicts the ALJ's conclusion and in fact supports a remand for immediate award of benefits, any potential error in the ALJ's function-by-function assessment is beside the point.

3.   <u>**Was the Credibility Determination Appropriate?**</u>

Mr. Kaighn challenges the ALJ's conclusion that his statements regarding the "intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 24.  I agree that the ALJ improperly discounted Mr. Kaighn's subjective testimony regarding his activities of daily living and the intensity and persistence of his symptoms arising from medically determinable impairments.  Discounting that testimony led to, in part, an RFC that did not accurately reflect Mr. Kaighn's limitations.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988) (footnote omitted).

I am also troubled by the ALJ's use of the boilerplate phrase, "not credible to the extent they are inconsistent with the above residual function assessment."  This phrase might not be objectionable per se.  *See Holbrook v. Colvin*, 521 F. App'x 658, 664 (10th Cir. 2013) (unpublished) ("[C]onclusory language is problematic only when it appears in the absence of a more thorough analysis, not when, as here, the ALJ's decision referred to specific evidence in support of its conclusions.") (quotation marks omitted) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012)).  The Seventh Circuit has elaborated on the dangers of relying on such boilerplate and the difficulty it poses to reviewing judges who are attempting to parse

17

through the ALJ's reasoning.  *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012)

(rejecting identical language as "opaque" and "backward" because it circularly allowed an ALJ

to reach a conclusion about a claimant's ability to work by rejecting a claimant's testimony and

then using that same disputed conclusion to justify rejecting the claimant's testimony in the first

place).

 Here, the ALJ did little more than provide an unhelpful boilerplate.  His conclusion gives

no indication of what weight the ALJ gave Mr. Kaighn's testimony.  Was it no weight at all?

Some weight?  From the opinion, it looks like the ALJ gave great weight, perhaps controlling

weight, to Mr. Kaighn's statements about things he could do despite his limitations—for

example, attending one VA-affiliated hunt, going to the gym, and hoping he could go back to

school—while giving no weight to his statements about the limiting effects of his impairments.

This strikes me as an unfair characterization of the record.  To be sure, inconsistency between a

claimant's testimony about the limiting effect of symptoms and other substantial evidence in the

record can be a valid reason to discount the claimant's testimony.  20 C.F.R. § 404.1529(c).  But

the statements and medical evidence that the ALJ relied on to discount Mr. Kaighn's testimony

are not inconsistent.

 For instance, the ALJ repeatedly references Mr. Kaighn's stated desire to return to school

for retraining as proof that his problems concentrating and focusing are not as severe as he

claims them to be.  Aspirations, however, are not evidence of abilities, at least in this case.  That

Mr. Kaighn wishes to return to school does not mean he is capable of returning to school.  Even

if he were capable, disability accommodations, online classes, and other support mechanisms

make further schooling a questionable metric for judging Mr. Kaighn's ability to do sedentary

work.  The ALJ also pointed to testimony that Mr. Kaighn participated in a hunt with other

18

veterans as evidence of his abilities.  This fact, however, does not seem to cut one way or another, as there was no accompanying evidence about what sort of functional requirements the hunt entailed or whether Mr. Kaighn experienced any difficulties in participating.  Finally, the evidence that Mr. Kaighn is able to exercise occasionally, read, pay bills, attend appointments, and fold clothes is not evidence that he can engage in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.").  In reciting these activities, the ALJ notably left off discussion of how difficult Mr. Kaighn found these activities.  R. 71 (cannot read for 20 minutes without getting a headache and losing focus, and cannot sit through an hour-long TV program); R. 74 (can fold laundry for 5 minutes); R. 75 (can only drive 10-15 miles at most).

The ALJ provided a second justification for finding Mr. Kaighn's testimony not credible: that the objective medical evidence contradicted Mr. Kaighn's story.  However, when the opinions are weighed properly, as discussed above, the inconsistency disappears.  Dr. Steele, a treating physician, opined that Mr. Kaighn was markedly impaired in his ability to concentrate and interact with supervisors and coworkers.  That assessment was supported by notes from Dr. Bowen and Dr. Lindsay.  While there is not complete harmony among the opinions about the extent of Mr. Kaighn's symptoms, the substantial weight of the evidence supports rather than contradicts Mr. Kaighn's testimony, and therefore his testimony should have received at least some weight.

### 4.  Did the ALJ Evaluate the VA Rating Correctly?

As a foundational matter, the Commissioner is correct to point out that the opinions of other agencies, including the VA, are not binding on the Social Security Administration.  C.F.R.

§ 404.1504; SSR 06-3p, 2006 WL 2329939, at *6-7; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).  And I am convinced that the ALJ at least considered the VA's disability rating for Mr. Kaighn.  R. 26 (noting a rating of 70 percent disability for Mr. Kaighn's PTSD).  However, in light of the failure to give adequate weight to the opinions of Drs. Steele, Scribner, Lindsay, and those parts of Dr. Bowen's opinion that supported a finding of disability and the ALJ's improper credibility determination regarding Mr. Kaighn, the VA disability rating, while not binding on the ALJ, is yet another piece of evidence tending to support a finding of disability in this case.  Taken together, the ALJ's conclusion is overwhelmed by the substantial evidence in the record.  There is, in fact, very little evidence in the record that suggests Mr. Kaighn's description of the severity and limiting effects of his symptoms is inaccurate.

**Remedy**

Mr. Kaighn requests that the Court remand the case to the ALJ for further consideration. However, the Court is permitted by statute to enter an immediate award for Mr. Kaighn.  *See* 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing.").  "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987).

Because I find that the ALJ's decision that Mr. Kaighn can perform sedentary work with some restrictions is not supported by substantial evidence, and because sedentary work is the lowest classification of work, I see no need for further fact-finding on remand.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 745-46 (10th Cir. 1993).  Rather, if the opinions and testimony in the record were given the correct weight, then the RFC would have included the

marked limitations on concentration and focus testified to by both Dr. Steele and Mr. Kaighn, and—according to the hypotheticals asked by the ALJ—the vocational expert would have testified that such a person could not perform the jobs identified under the earlier, erroneous RFC.

Mr. Kaighn has been disabled for several years now, and the relevant facts have been extensively discussed in the record.  Substantial evidence supports, indeed in my view compels, a finding of disability.  Therefore, the appropriate remedy is a remand for an immediate award of benefits.[9]

**Order**

The decision of the Commissioner is reversed, and the case remanded to the Commissioner for an immediate award of benefits to Mr. Kaighn.

DATED this 6th day of February, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

[9] I also note that the Tenth Circuit has supported remands for immediate awards in prior cases where the Commissioner has "resented Plaintiff's persistence, refused to take her disease seriously, and at times treated her claim with indifference or disrespect."  *Sisco*, 10 F.3d at 746. Here, the ALJ accused Mr. Kaighn of "play[ing] the system" when there is no evidence in the record that Mr. Kaighn is faking his symptoms.  R. 83.  Even if the ALJ believed Mr. Kaighn's testimony lacked credibility, statements like that are inappropriate and disrespectful to any claimant, let alone one that served three combat tours defending this country.